A90A0105. SINGLETON v. THE STATE.
(393 SE2d 6)

SOGNIER, Judge.

Joseph H. Singleton was convicted of kidnapping, rape, robbery, and giving a false name to an officer, and he appeals.

The evidence adduced at trial showed that shortly after midnight on October 31, 1987, appellant's elderly next door neighbor in Way-

cross was outside checking her garden hose when a man walked up behind her, grabbed her around the neck, and threatened to kill her if she screamed. Although unable to see her assailant, the victim heard his voice, and was able to ascertain that he was a young Caucasian male. While removing her clothing, the attacker located money in the victim's underclothing and grabbed it. He then dragged the victim across the ground to another spot, raped her, and threatened to attack her retarded daughter. After the attacker left, the victim crawled to her house and telephoned her son and another daughter, who called the police. Physical examination of the victim at a hospital revealed bruises and contusions around her eye and on her arms and legs, as well as a broken arm. An abrasion on the vaginal wall and the presence of sperm were consistent with forcible intercourse.

Several days later, the victim was again in her yard when she heard a voice from next door she recognized as that of her attacker. She saw two men — one with long, dark hair and a beard and another with blond hair and no beard — and determined that the voice she recognized belonged to the bearded man with the dark hair. She informed her daughter that she had recognized the voice, and her daughter contacted the police.

After ascertaining that two of the occupants of the house next door to the victim's, Rex Dochterman and "Leroy" Singleton, worked at a nursery, Detectives Michael Braddock and Julius Fiveash of the Waycross Police Department went to the nursery, where they were given permission to speak with Dochterman. Dochterman willingly accompanied them to the police station, where he was advised of his rights and questioned. Dochterman, who had blond hair and no beard, also voluntarily took a polygraph examination at the request of the detectives, and passed. Dochterman informed them that his roommate, "Leroy" Singleton, had long, dark hair and a beard.

The detectives returned to the nursery and asked to speak with "Leroy" Singleton, later identified as appellant. The manager agreed, and appellant accompanied them back to the police station. Upon being advised of his constitutional rights and signing a waiver of counsel, appellant first stated that on the night in question he had argued with his girl friend and gotten drunk, and he could remember nothing from midnight until 7:00 a.m. After agreeing to take and failing a polygraph examination, appellant was again advised of his rights and again executed a waiver of counsel form. He then gave a tape recorded statement admitting that after arguing with his girl friend, he began drinking. Realizing that he had no money but wanting more to drink, he decided to rob his next door neighbor, hid in the darkness, and attacked her from behind. He admitted taking her clothes off and having sex with her, taking her money, and buying liquor with it. Appellant also admitted that "Leroy" Singleton was his father's name,

and not his. The victim positively identified appellant at trial as her attacker. Appellant did not testify at trial.

1. In two enumerations, appellant contends the trial court erred by denying the motion to suppress his statement because he was "seized" unlawfully from his place of employment in a warrantless arrest and taken to the police station, thereby violating his Fourth Amendment rights. We do not agree. Detectives Braddock and Fiveash both testified that appellant willingly agreed to accompany them to the police station, and was not under arrest when he did so. Appellant was not handcuffed, was advised he was free to go at any time, and rode to the police station in an unmarked car without a "cage." Both detectives testified that only after appellant had given his statement admitting he had raped and robbed the victim was he placed under arrest. Based on this evidence, we agree with the trial court's finding that no Fourth Amendment violation occurred when the detectives entered the nursery or when appellant accompanied the officers to the police station, which "appears to have been voluntary on [appellant's] part."

Moreover, even if an arrest took place when appellant went to the police station, contrary to appellant's argument probable cause existed for such an arrest, and thus a warrant was not required. "If probable cause to arrest exists at the time of detention and the person detained is outside of his home, the law does not require a warrant. [Cit.] The decision on whether probable cause exists rests upon a test of reasonableness and probabilities. [Cit.] 'Probable cause existed if at the time of the arrest the officers had knowledge and reasonably trustworthy information about facts and circumstances sufficient to warrant a prudent man in believing that [appellant] had committed an offense.' [Cit.]" *State v. Grant*, 257 Ga. 123, 125 (1) (355 SE2d 646) (1987). In the case at bar, the victim had identified her assailant as a young, Caucasian male, had positively identified the voice of her attacker, and knew he had long, dark hair and a beard and had been next door. This constituted probable cause for appellant's arrest.

2. Appellant also asserts the trial court erred by admitting his statement into evidence because it was involuntary and was made without a knowing and intelligent waiver of his rights. At a hearing held pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), appellant testified that he is barely able to read and thus could not have understood the rights that he admitted were read to him, or the waiver of counsel form. In his taped statement, appellant specifically acknowledged signing the two waiver of counsel forms and understanding his rights. Both detectives testified that appellant seemed able to communicate with them, appeared to understand his rights, and did not appear to be under the influence of alco-

hol or drugs; and that no threats or promises were made to appellant in hopes of inducing the statement.

" 'Factual and credibility determinations as to voluntariness of a confession, including factual and credibility determinations as to issues of rights waiver, are normally made by the trial judge and must be accepted by appellate courts unless such determinations are clearly erroneous. (Cits.)' [Cit.]" *Peabody v. State*, 190 Ga. App. 304, 305 (1) (378 SE2d 712) (1989). The trial judge had the opportunity to observe appellant and to determine from his demeanor whether he possessed sufficient intelligence and capacity to make a voluntary waiver of his rights. The trial court found that appellant "did clearly understand his rights" and "knowingly and voluntarily surrendered those rights," and that "the statement made by him was freely and voluntarily made" and would be admitted. We find no error in this determination. *Johnson v. State*, 188 Ga. App. 499, 500 (1) (373 SE2d 284) (1988).

3. Appellant enumerates the general grounds, specifically claiming that the trial court erred by denying his motion for a directed verdict of acquittal because there was insufficient corroboration for his confession as required by OCGA § 24-3-53. A conviction may be had on a confession although corroborated only by proof of the corpus delicti. *Nation v. State*, 180 Ga. App. 460, 461 (1) (349 SE2d 479) (1986). "The amount of evidence necessary to corroborate a confession is for the jury to decide, as it may consider the confession along with other facts and circumstances independent and separate from it in determining whether or not the corpus delicti has been established to their satisfaction. [Cit.]" Id. In the case sub judice, the corpus delicti was established by direct evidence, including the victim's own testimony and scientific and medical evidence. In addition, the victim also identified appellant as her attacker. We find the evidence more than sufficient to corroborate appellant's statement, as well as to meet the standard of proof required by *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

4. Appellant's remaining three enumerations of error are unsupported by argument or citations of authority, and accordingly are deemed abandoned pursuant to Rule 15 (c) (2) of this court.

*Judgment affirmed. Carley, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 7, 1990 —
REHEARING DENIED MARCH 27, 1990.

*Clyde W. Royals*, for appellant.
*Harry D. Dixon, Jr., District Attorney, Richard E. Currie, Assis-*

*tant District Attorney*, for appellee.